IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES ADISON HOLMES, JR. | § | |
|     TDCJ-CID #1562500 | § | |
| v. | § | C.A. NO. C-09-273 |
| | § | |
| SECURITY GUARD SCOUT, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION TO
DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this prisoner civil rights action, plaintiff James Adison Holmes, Jr. claims that on March 19, 2009, he was assaulted by Officer Michael Skau, a correctional officer employed by the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), who was also working as a hospital security guard at the time of the assault. In addition to suing Officer Skau, plaintiff is suing Bruce Parson, a Live Oak County Deputy who escorted him to the hospital, and another TDCJ-CID Officer, Pedro Amador, alleging that these individuals failed to protect him from the assault.

Pending is defendant Deputy Parson's motion for summary judgment. (D.E. 57). Plaintiff has filed a response in opposition. (D.E. 60). For the reasons stated herein, it is respectfully recommended that Deputy Parson's motion be denied, and that plaintiff's claims against this defendant proceed to trial.

## I.  JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  PROCEDURAL HISTORY

Plaintiff is an inmate in the TDCJ-CID and is currently confined at the Smith Unit in Lamesa, Texas.  He filed this action on October 8, 2009, alleging that, while in the custody of Live Oak County, Officer Skau used excessive force against him, and Deputy Parson and Officer Amador failed to protect him from the assault, in deliberate difference to his health and safety in violation of the Eighth Amendment.[1]  (D.E. 1).  The Court retained plaintiff's claims against the three individual defendants, (D.E. 20), but declined to add the hospital as a defendant. (D.E. 44).

On August 20, 2010, Deputy Parson filed his motion for summary judgment on the grounds of qualified immunity.  (D.E. 57).  Plaintiff objects to the summary judgment motion arguing that there are genuine issues of material fact as to whether Deputy Parson was aware of a serious risk to his health and safety and ignored that risk, and whether Deputy Parson's actions were reasonable in light of the facts.

---

[1] Plaintiff did not know the names of the defendants at the time he filed suit, but these were learned as the action progressed.

### III. SUMMARY JUDGMENT EVIDENCE

In support of the motion for summary judgment, Deputy Parson offers his own affidavit. (D.E. 57, Attach. 1). In addition, on June 29, 2010, the Chief Deputy of the Live Oak County Sheriff's Office submitted 152 pages of records concerning plaintiff Holmes and the events of March 19, 2009. (D.E. 40).[2]

On September 3, 2010, plaintiff filed a pleading entitled "Proof of Evidence to Support Claims Against Defendant Bruce Parson." (D.E. 60). Defendant Parson objects to the pleading on the grounds of hearsay.[3] (D.E. 61).

The summary judgment evidence establishes the following:

On March 19, 2009, at approximately 8:49 p.m., the Live Oak County Jail called the Live Oak County Sheriff's Department requesting that an officer be sent to escort plaintiff to the Spohn Bee County Hospital for an x-ray of his hand because he had "slugged the glass on the wall." (D.E. 40, at 1). Two Live Oak County deputies escorted plaintiff to the hospital, arriving at the emergency room at approximately 9:35 p.m. Id. at 3-4.

---

[2] The majority of these Live Oak County records concern plaintiff's arrest on June 21, 2008 on outstanding warrants for aggravated assault and arson, and his medical treatment prior to the March 19, 2009 incident, reflecting that plaintiff was often violent, suicidal, and prescribed anti-psychotic medications. (D.E. 40, at 60-150). These records are highly prejudicial and more importantly, not relevant to the events of March 19, 2009, and are therefore, not considered.

[3] The pleading is essentially plaintiff's statement of the events and arguments, and is construed as such. However, plaintiff did not submit the statement as sworn, nor did he make it under penalty of perjury.

Plaintiff was assigned to Emergency Room #6. Id. at 4. Officer Skau entered the room and observed plaintiff standing next to the bed. Id. He ordered plaintiff to sit on the bed and to lie down per hospital policy. Id. Plaintiff stated that he wanted to stand. Id. Officer Skau ordered him to lie down a second time, and plaintiff complied. Id. at 5.

The two escorting deputies told Officer Skau that they were being relieved by Deputy Parson, and they left the room. Id. After checking on another TDCJ inmate that was in another emergency room, Officer Skau returned to Emergency Room #6 where he observed plaintiff talking with Deputy Parson. Id. Deputy Parson was standing approximately one to two feet away from plaintiff. Id. Officer Skau believed Deputy Parson, who had his service revolver, was standing too close to plaintiff. Id.

TDCJ Officer Amador was at the hospital, having escorted another inmate. Id. at 3. Officer Skau asked Officer Amador to watch plaintiff while he spoke to Deputy Parson outside of Emergency Room #6. Id. at 5. He then advised Deputy Parson that he needed to stay a safe distance away from plaintiff. Id.

Deputy Parson returned to Emergency Room #6. Id. at 5. A nurse entered the room and reported that plaintiff's x-rays were negative, that he did not have a fractured hand, and she gave discharge instructions to plaintiff. Id. at 36-48. Officer Skau then retrieved a wheelchair to escort plaintiff out of the hospital. Id.

at 5.  As he was pushing plaintiff in the wheelchair toward the exit doors, an altercation occurred between them.  Id. at 5-6.

On March 29, 2009, the Beeville Police Department interviewed Officer Skau about the incident.  Id. at 7.  He declined to press charges against plaintiff; however, the Beeville Police Department conducted a criminal investigation.  Id. at 3-30. The following persons were interviewed: Officer Skau; Nurse Janet Gonzalez; Tammy Ezzell; Nurse Fred Repper; Nurse Lorraine Reyes; Patient Access Representative Sylvia Tolleson; Deputy Parson; and plaintiff.  Id. at 5-17. In addition, pictures were taken of plaintiff's alleged injuries arising from the altercation.  Id. at 18-29.

On April 8, 2009, the custodian of the records for Christus-Spohn Bee County Hospital was subpoenaed by the Live Oak County Grand Jury to present all hospital documents and reports concerning the March 19, 2009 incident.  Id. at 31-32.  There is no summary judgment evidence as to whether plaintiff was indicted for assault by the Live Oak County Grand Jury.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most

favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an

element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

## V. DISCUSSION

Defendant Parson moves for summary judgment on the grounds that plaintiff has failed to present any evidence that he knew of a serious risk to plaintiff's safety, yet ignored that risk in deliberate indifference. (D.E. 57). In the alternative, Deputy Parson argues that he acted reasonably under the circumstances, entitling him to qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. __, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). "First, he must claim that the defendants committed a constitutional violation under current law." Id.

(citations omitted). "Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at __, 129 S. Ct. at 818 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

## A.   Step 1 – constitutional violation.

Prison officials have a duty to protect inmates from violence, including violence at the hands of other officers. See Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (5th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to an inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 U.S. at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Plaintiff argues that Officer Skau behaved in an aggressive and hostile

manner prior to assaulting him, and that Deputy Parson observed this behavior, such that he knew, or should have known, that he was placing plaintiff in danger when he left plaintiff alone with Officer Skau to retrieve the police car. The facts of the case are assumed in the light most favorable to plaintiff. See Caboni, 278 F.3d at 451.

In plaintiff's March 20, 2009 statement to the Beeville Police Department, he related that Officer Skau watched him from the door of Emergency Room #6 before calling Deputy Parson to come talk to him. (D.E. 40, at 16). When Deputy Parson returned to plaintiff's room, plaintiff asked him what was going on, and Deputy Parson responded that he did not know, "but just be cool and let's get out of here." Id. As the nurse finished wrapping his hand, plaintiff observed Officer Skau with his gun unsnapped from the holster and his hand on his gun. Id. Plaintiff asked Officer Skau "what was he going to do, draw on me?" Id. Deputy Parson told him to just get in the wheelchair so they could leave. Id.

Plaintiff stated that he was "worried," and that "he believed [Deputy Parson] was worried, too." Id. at 16. Officer Skau began pushing the wheelchair, and plaintiff looked behind him for Deputy Parson and asked him to get Officer Skau's name and badge number. Id. He testified that Officer Skau then grabbed his shirt collar and began choking him, and that Deputy Parson told Officer Skau that this

was unnecessary.  Id.

Indeed, in defendant's undated statement given to the Beeville Police Department during its investigation of the incident, Deputy Parson confirmed that he first observed Officer Skau "standing in the hall and he had his hand on his pistol as if ready to draw it." Id. at 15.  He told plaintiff he did not know what was going on, but advised him to "just let it go." Id.  He confirmed that, when plaintiff asked him to get Officer Skau's name and badge number, Officer Skau "grabbed the back of Holmes' shirt and was choking him and told him to shut up and then grabbed him in a choke hold." Id.  Deputy Parson grabbed Officer Skau's arm and Officer Skau pulled away, still pushing the wheelchair and holding plaintiff in a choke hold. Id.  Deputy Parson provided additional details regarding the incident between Officer Skau and plaintiff:

> ... told Holmes to get up and go to the car but [Officer Skau] had Holmes pinned to the wall of the building and Holmes was struggling as he was being choked.  I then brought the car around and opened the back door and at that time [Officer Skau] threw Holmes into the back seat but before Holmes could get his legs inside [Officer Skau] slammed the door on his legs and slammed the door on his legs again.  Holmes put his foot against the door the second time [Officer Skau] slammed the door and my rear view window frame was bent at this time.  Holmes got his legs all the way in the car and we left the hospital.

Id.

In his affidavit dated August 19, 2010, Deputy Parson testified that "[s]uddenly and without warning, at the hospital exit, a minor altercation broke out between Skau and Holmes." (D.E. 57) (Parson Aff. at ¶ 8). This statement eliminates any of his prior testimony that tensions were rising prior to plaintiff being wheeled out of the hospital, and that the physical altercation began as soon as plaintiff asked for Officer Skau's name and badge number. As such, Deputy Parson's statement that the altercation occurred "suddenly and without warning," is inconsistent with his prior statement to the Beeville police. Compare (D.E. 40, at 15) to (D.E. 57) (Parson Aff.).

Pursuant to the Federal Rules of Evidence, a prior statement of a witness is not hearsay and is admissible if it is inconsistent with the testimony given at trial.[4] See Fed. R. Evid. 801(d)(1). In adopting this rule, the advisory committee explained that "the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation." Fed. R. Evid. 801 advisory committee's note (1972 Proposed Rules, Note to Subdivision (d)); see also United States v. Bigham, 812 F.2d 943, 946 (5th Cir. 1987) ("that the prior statement is more likely to be true as

---

[4] Of course, Deputy Parson's prior statement may also be admissible as an admission by a party opponent. Fed. R. Evid. 801(d)(2).

it was made closer in time to the event") (discussing Rule 801). The benefit in allowing the prior inconsistent statement is it allows the trier of fact to have "the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, [the trier of fact] is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court." Fed. R. Evid. 801 advisory committee's note (1972 Proposed Rules, Note to Subdivision (d)).

A fact issue exists as to whether or not Deputy Parson knew plaintiff was at a risk of harm when he left him alone with Officer Skau to go retrieve the patrol car. Thus, it is respectfully recommended that plaintiff has sufficiently stated an Eighth Amendment claim against Deputy Parson, and Deputy Parson is not entitled to judgment in his favor on the grounds that plaintiff has failed to state a constitutional violation.

**B.     Step 2 – objective reasonableness.**

In the context of an Eighth Amendment deliberate indifference claim, whether a defendant's actions are objectively reasonable depends on whether the defendant both knew of the risk and failed to take reasonable measures to alleviate it. Farmer, 511 U.S. at 847. The Fifth Circuit has explained that "the 'failure to

alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quoting Farmer, 511 U.S. at 838). Moreover, "negligence is insufficient to support a finding of liability." Adames v. Perez, 331 F.3d 508, 514 (5th Cir. 2003). Prison officials violate the Eighth Amendment only if they are both aware of a substantial risk to inmate safety and fail to respond properly. Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004).

When assessing objective reasonableness, it is necessary to articulate the asserted constitutional right more specifically. Thompson v. Upshur County, Tex., 245 F.3d 447, 460 (5th Cir. 2001). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." Id. (citation omitted). For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Because plaintiff's allegations state a constitutional violation, it must be examined whether it would be clear to a reasonable officer that, under the facts of this case, his conduct would

have been unlawful.  See Kinney v. Weaver, 367 F.3d 337, 384 (5th Cir. 2004) ("To disentitle public officials to qualified immunity, the unlawfulness of their conduct 'must be apparent.'") (quoting Anderson, 483 U.S. at 640).

In this case, Deputy Parson's statement given to the Beeville police suggests that he was aware plaintiff was at a risk of harm from Officer Skau as he was being transported out of the hospital because he actually observed Officer Skau choke plaintiff.  (D.E. 40, at 15).  A genuine issue of material fact exists as to whether it was reasonable for Deputy Parson to then leave plaintiff alone with Officer Skau while he went to get the car under the circumstances of this case as presented by plaintiff.  Moreover, a hospital employee who witnessed a portion of the incident, Nurse Lorraine Reyes, testified regarding Deputy Parson's actions and demeanor:

> ... I heard screaming and fighting over the ambulance bay entrance while I was triaging a patient in the triage room. I immediately closed the door behind the elderly patient I was triaging and saw that our security officer [Officer Skau] was trying to get the same inmate to cooperate by staying in the wheelchair while he was wheeling him out. By this time the inmate was cursing and appeared to be very physical attempting to get up and trying to swing his arms from side to side as if trying to punch [Officer Skau].  <u>During this period I had only seen 1 Live Oak officer and he appeared unaffected by everything that had been going on and had made no effort to contain the rage of his inmate</u>.

Id. at 13 (emphasis added).

There are too many contested facts to determine whether Deputy Parson responded reasonably and in accordance with plaintiff's Eighth Amendment rights under the disputed facts of this case. Indeed, a trier of fact could find that Deputy Parson's inconsistent statements suggest that his actions were unreasonable. Then again, a trier of fact could find that, once the actual undisputed facts are determined, that Deputy Parson responded appropriately under the circumstances of this case. Regardless, at this point it is clear that genuine issues of material fact exist, and therefore, summary judgment is not warranted.

## VI.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Deputy Parson's motion for summary judgment, (D.E. 57), be denied, and that plaintiff's claims against this defendant proceed to trial.

Respectfully submitted this 22nd day of October 2010.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Rule 72(b) of the Federal Rules of Civil Procedure, and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).